CLERKS OFFICE US DISTRICT COURT
AT ABINGDON, VA
FILED

November 07, 2024

LAURA A. AUSTIN, CLERK
BY: /s/ Kendra Campbell
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

**Jonathan Kastenbaum**, as Administrator
of the Estate of Sharon Winek, deceased,

    Plaintiff,

    v.

Washington County Sheriff Blake Andis,
in both his official and personal capacities,

    and

Washington County Detective William Smarr,
in both his official and personal capacities,

    and

Michael Carey, Administrator of the Estate of
Austin Lee Edwards, deceased,

    Defendants.

Civil Action No.    1:24cv54

Jury Trial Demanded

## COMPLAINT

COMES NOW Plaintiff, Jonathan Kastenbaum, Administrator of the Estate of Sharon Winek, deceased, by counsel, and for this Complaint against Defendants Washington County Sheriff Blake Andis, Washington County Detective William Smarr, and Michael Carey, Administrator of the Estate of Austin Lee Edwards, deceased, and alleges as follows.

## INTRODUCTION

1.    On November 25, 2022, Austin Lee Edwards—a 28-year-old Washington County Sheriff's deputy—kidnapped 15-year-old R.W. after murdering her mother and grandparents and setting fire to their home in Riverside, California. Edwards gained entry to the home by

identifying himself as a law enforcement officer, displaying his law enforcement badge and

service weapon, and falsely claiming that he was conducting a law enforcement investigation.

2.      After committing these murders, Edwards fled the scene in his vehicle with R.W.

before becoming surrounded by deputies from the San Bernardino County Sheriff's Department.

Edwards killed himself in a shootout with the deputies.

3.      Edwards should have never been hired by the Washington County Sheriff's

Office in the first place. The responsible individuals failed to conduct any investigation into his

background before hiring him. If they did, they would have learned that in 2016 he was detained

for a psychiatric evaluation in connection with cutting himself and threatening to kill his father.

As a result, Edwards was held on a temporary detention order and admitted to a treatment

facility, which prevented him, under Virginia law, from buying or possessing a firearm until that

right was restored by a court.

4.      Edwards' right to buy or possess a firearm was never restored by a court. Despite

this, the Washington County Sheriff's Office ("WCSO") shockingly hired him as a deputy and

provided him with a service firearm. During his employment, WCSO learned of additional red

flags regarding Edwards but failed to act on them.

5.      Plaintiff now seeks redress under state and federal law for the Washington County

Sheriff's Office's many failures in hiring Edwards, and for the heinous murders he committed on

November 25, 2022. Accordingly, this case is in the public interest.

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and

1343(a)(3)-(4) because Plaintiff asserts claims arising under the laws of the United States,

including 42 U.S.C. § 1983. The Court has supplemental jurisdiction over Plaintiff's claims

arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

7.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## PARTIES

8.      Plaintiff Jonathan Kastenbaum is the Administrator of the Estate of Sharon Winek, deceased, having so qualified in the Circuit Court for the City of Richmond on October 8, 2024, pursuant to Va. Code § 64.2-454. Sharon Winek is survived by her daughter Mychelle Blandin and her granddaughters R.W. and B.W.

9.      Defendant Sheriff Blake Andis ("Sheriff Andis") is the Sheriff of the Washington County Sheriff's Office.

10.      At all times relevant hereto, Defendant Detective William Smarr ("Detective Smarr") was a detective employed by the Washington County Sheriff's Department in Washington County, Virginia.

11.      Defendant Michael Carey is the Administrator of the Estate of Austin Lee Edwards, deceased, having so qualified in the Circuit Court for the City of Richmond on December 14, 2023, pursuant to Va Code § 64.2-454.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

*Edwards is hired by WCSO after he resigns his position with the Virginia State Police.*

12.      Austin Lee Edwards first became a law enforcement officer in January 2022, when he was hired by the Virginia State Police ("VSP") as a state trooper.

13.      Edwards remained employed with the VSP until he resigned on October 28, 2022.

14.     After resigning his employment with the VSP, Edwards applied for a position as a deputy with the Washington County Sheriff's Office in November 2022. The Sheriff's Office hired him on November 16, 2022.

15.     The Sheriff's Office did not conduct an adequate investigation into Edwards' background before hiring him.

16.     The detective from WCSO who reviewed Edwards' application to become a deputy sheriff was Detective Smarr.

17.     When Detective Smarr reached out to a VSP representative to inquire about Edwards, the representative stated he was not comfortable discussing Edwards' background.

18. Upon information and belief, WCSO's non-discretionary policies and procedures, and state law, Va. Code § 15.2-1705, prohibited WCSO from employing Edwards as a deputy sheriff until it received information from VSP and any other law-enforcement agency in Virginia that had that previously employed Edwards, related to his job performance that led to his resignation.

19.     Detective Smarr also failed to speak with any of the references Edwards listed on his application. Of the three references listed, Detective Smarr never reached out to Edwards' father, and never spoke with the other two references.

20.     Edwards' application itself was deficient.

21. In the application, Edwards did not respond to a question about whether he had a weapons permit or if it had ever been revoked.

22.     In the application, Edwards did not provide a response to the question of whether he had been convicted of a crime, whether he had ever been questioned by law enforcement, or whether he had ever been detained.

23.     The application identified no response to questions about whether Edwards had acted out in violence toward another person, and whether he had ever been the subject of a civil restraining order, protection order, or contact order.

24.     Upon information and belief, WCSO's non-discretionary policies and procedures required an applicant to provide responses to the questions on the application that asked whether the applicant had been convicted of a crime, whether the applicant had ever been questioned by law enforcement, or whether the applicant had ever been detained, before the applicant could be hired as a deputy.

25.     Upon information and belief, WCSO's non-discretionary policies and procedures required an applicant to provide responses to the questions on the application that asked whether the applicant had acted out in violence toward another person and whether the person had been the subject of a civil restraining order, protection order, or contact order, before the applicant could be hired as a deputy.

26.     Upon information and belief, WSCO's non-discretionary policies and procedures and Virginia law, Va. Code § 15.2-1705, required WSCO to perform an FBI record check, before hiring an applicant as a deputy.

27.     Upon information and belief, WCSO's non-discretionary polices and procedures required WCSO to check the National Crime Information Center ("NCIC") and the Virginia Criminal Information Network ("VCIN") when considering whether to hire an applicant as a deputy.

28.     Upon information and belief, WSCO's non-discretionary policies and procedures, Virginia law, Va. Code § 15.2-1705, Va. Code § 19.2-389, and other state and federal laws,

required WSCO to check the Central Criminal Records Exchange ("CCRE") when considering whether to hire an applicant as a deputy.

29.     Upon information and belief, WSCO's non-discretionary policies and procedures and Virginia law, Va. Code § 19.2-389, prohibited WSCO from hiring an applicant as a deputy if the applicant was listed in the CCRE as being ineligible to possess a firearm.

30.     Detective Smarr claimed to have conducted an FBI record check for Edwards, and to have checked the CCRE, the NCIC, and the VCIN.

31.     Detective Smarr's claim that he checked the CCRE was false.

32.     If he had done so, he would have learned that Edwards was detained for a psychiatric evaluation in February 2016 after threatening to kill himself and his father.

33.     On February 8, 2016, local police and emergency medical technicians took Edwards into custody at a local hospital, where he was detained under an emergency custody order.

34.     A local judge then approved a temporary detention order for Edwards and ordered his transfer to a local psychiatric facility.

35.     During his psychiatric stay, another judge barred Edwards from purchasing, possessing or transporting firearms. Edwards was advised that his gun rights had been revoked unless restored by a court.

36.     The treatment order detailing the loss of Edwards' gun rights was sent to the Central Criminal Records Exchange by the clerk for the Bristol General District Court.

37.     Under Virginia law, any person who is held on a temporary detention order and is subsequently admitted to a treatment facility is prohibited from buying or possessing a firearm until that right is restored by a court.

38.     Edwards never petitioned a court to restore his right to buy or possess a firearm.

39.     As of the time he applied for a position with the Sheriff's Office, his right to buy or possess a firearm had not been restored by a court. As such, it would have been unlawful for him to own or possess a firearm under Virginia law.

40.     Upon information and belief, WCSO's non-discretionary policies and procedures required WCSO to investigate whether an applicant had the legal right to possess a firearm before hiring the applicant as a deputy.

41.     Edwards also failed a polygraph exam administered by WCSO prior to being hired there.

42.     Upon information and belief, WCSO's non-discretionary policies and procedures required an applicant for employment as a deputy to pass the polygraph exam or for there to be a reasonable explanation as to why the applicant did not pass.

43.     Upon information and belief, WCSO's non-discretionary policies and procedures and Virginia law, Va. Code § 15.2-1705, WCSO had the authority to require Edwards to undergo a psychological evaluation conducted under the supervision of a licensed psychiatrist or licensed clinical psychologist before employing the candidate as a deputy.

44.     Upon information and belief, Sheriff Andis, Detective Smarr, and WCSO did not require or even recommend that Edwards undergo a psychological evaluation before Edwards was hired as a deputy, or at any time.

45.     Upon information and belief, WCSO's non-discretionary policies and procedures, Virginia law, Va. Code § 18.2-308.2:1, and federal law, 18 U.S.C. § 922, it was illegal for WSCO to give Edwards a gun.

46.     Despite the above, the Sheriff's Office hired Edwards and provided him with a badge and service weapon.

*Additional red flags surfaced during Edwards' employment with WCSO.*

47.     After being hired, Edwards' supervisor(s) became suspicious of him.

48.     Specifically, his supervisor(s) became suspicious of him having improper and illegal contact with minors over the phone.

49.     As such, his supervisor(s) requested to see his phone so they could investigate further. Edwards refused these requests, and his supervisors failed to take additional action.

*Edwards "catfishes" R.W., a minor, by posing as a 17-year-old boy.*

50.     Edwards created a fake online profile for himself as a 17-year-old boy.

51.     He used this profile to "catfish" R.W., leading her to believe that she was exchanging messages with a boy similar in age to herself.

52.     Edwards sent romantic messages to R.W. with this fake profile and learned personal information about R.W.

53.     Edwards had also "catfished" another young woman living in the San Diego area.

*Edwards gains entry into the Winek home by claiming*
*that he was conducting a law enforcement investigation.*

54.     Edwards traveled across the country from Virginia to R.W.'s Riverside home at 11261 Price Court on November 25, 2022.

55.     R.W. resided at this address with her mother, Brooke, and her grandparents, Mark and Sharon Winek (who owned the home).

56.     When Edwards arrived at the home, only Mark and Sharon Winek were home. Brooke and her daughter, R.W., were not at the home.

57.     Edwards entered the home by falsely claiming that he was a law enforcement officer conducting an investigation. He showed Mark and Sharon his law enforcement badge and service weapon from WCSO.

58.     Edwards instructed Sharon to call Brooke. Once Brooke answered the phone, Sharon told Brooke that there was a detective at the home who was there to ask questions about a prior incident involving R.W. Sharon told Brooke that the detective wanted Brooke and R.W. to come to the home immediately.

59.     Edwards then instructed Sharon to call Mychelle, Brooke's sister. Sharon called Mychelle and told her (at Edwards' direction) to remind Brooke that she was to leave all cell phones in the car and come inside the home first while leaving R.W. in the car, since he would be questioning the two of them separately.

60.     While Sharon was on the phone with Mychelle, Edwards took the phone from Sharon and told Mychelle that he was a law enforcement detective. He told Mychelle that her mother (Sharon) was nervous but that he was trying to reassure her.

61.     Once Brooke arrived, pursuant to Edwards' instructions, she left R.W. and all cell phones in the car and entered the home.

*Edwards murders R.W.'s family, sets their home on fire, and kidnaps R.W.*

62.     After some time passed while R.W. was waiting in the car, she finally decided to get out of the car and enter the home.

63.     Upon entry, R.W. discovered that Edwards had murdered her mother by slitting her throat. Edwards had also attempted to murder her grandparents by asphyxiation. Her grandparents were both hogtied with bags over their heads, but at least one of them was still moving when R.W. entered the home.

64.    Edwards then set the house on fire and kidnapped R.W. at gunpoint with his service weapon.

65.    Edwards fled the scene with R.W. in his vehicle.

66.    Deputies from the San Bernardino County Sheriff's Department eventually surrounded Edwards.

67.    Edwards killed himself in a shootout with the deputies. R.W. survived.

## COUNT I – CIVIL RIGHTS ACTION (42 U.S.C. § 1983)

## DELIBERATE INDIFFERENCE—FAILURE TO SCREEN

### (Plaintiff v. Defendant Sheriff Blake Andis)

68.    Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation asserted in the preceding and following paragraphs.

69.    As the Sheriff of Washington County, Defendant Sheriff Andis is the chief policymaker for WCSO, where Edwards was hired on November 16, 2022.

70.    Defendant Sheriff Andis showed deliberate indifference in failing to adequately screen Edwards before hiring him as a Washington County Sheriff's Deputy, as well as in failing to adequately supervise him once he was hired.

71.    Had Defendant Sheriff Andis adequately screened and supervised Edwards, he would have understood that the plainly obvious consequence of hiring and failing to supervise Edwards, with his violent past, psychological issues, and suicidal ideations, would lead to a violation of the rights of people he came into contact with once he was invested with the authority, status, weapons, training, and equipment of a police officer, as occurred when Edwards brutally murdered Plaintiff's decedent.

72.     In light of the duties and responsibilities of Defendant Sheriff Andis, the need for adequate screening and supervision of sheriff's deputies like Edwards was or should have been obvious.

73.     Defendant Sheriff Andis was on actual or constructive notice of Edwards's psychological history, having asserted that his background was checked through the CCRE (Criminal History Records Check), NCIC (National Crime Information Center), VCIN (Virginia Criminal Information Network), and the FBI (Federal Bureau of Investigation).

74.     Had Defendant Sheriff Andis properly screened Edwards before hiring him as a Sheriff's Deputy and not acted with deliberate indifference in making his hiring decision, he would have discovered (1) the 2016 incident in which Edwards was detained for psychiatric evaluation after threatening to kill his father and himself; (2) Edwards was taken into custody after he cut his hand and emergency medical technicians had to call police to help restrain him; (3) Edwards was taken to a local hospital after the 2016 incident, where he was detained under an emergency custody order; (4) Edwards was placed under a temporary detention order as a result of the incident; (5) Edwards was transferred to a local psychiatric facility as a result of the incident; (6) Edwards' father told police after the 2016 incident that he did not know why his son harmed himself but said it might have been related to troubles with his girlfriend; and (7) Edwards's right to own a firearm was revoked as a result of the 2016 incident.

75.     Had Defendant Sheriff Andis properly screened Edwards and not acted with deliberate indifference in making his hiring decision, he would not have hired Edwards as a Deputy Sheriff and provided him with a badge and a service firearm. As the VSP admitted in its public statements after Edwards brutally murdered his victims in California, it would not have hired him had it known of his history.

76.     Defendant Sheriff Andis, in failing to properly screen Edwards for a position with the WCSO as a Deputy Sheriff, disregarded a known or obvious consequence of his conduct.

77.     Adequate scrutiny of Edwards's background would lead a reasonable policymaker in Defendant Sheriff Andis's position to conclude that the plainly obvious consequences of the decision to hire Edwards would be the deprivation of a third party's federally protected rights.

78.     Due to Edwards's background, to which Defendant Sheriff Andis was deliberately indifferent, Edwards was highly likely to inflict the particular injury Plaintiff's decedent suffered on November 25, 2022.

79.     Defendants Sheriff Andis's deliberate indifference directly and proximately caused the death of Plaintiff's decedent.

80.     As a direct and proximate result of Sheriff Andis's deliberate indifference in his failure to screen Edwards before hiring him and issuing him a badge and service firearm, Plaintiff's decedent was murdered on November 25, 2022.

81.     As a direct and proximate result of Sheriff Andis's wrongful acts, Plaintiff's decedent suffered unconscionable bodily injuries, physical pain, mental anguish, and death.

82.     As a direct and proximate result of Sheriff Andis's wrongful acts, Plaintiff seeks the following damages pursuant to the Virginia Wrongful Death Act, Va. Code § 8.01-50, et seq.:

    a.     Sorrow, mental anguish, and solace, including society, companionship, comfort, guidance, kindly offices and advice of the decedent;

    b.     Compensation for reasonably expected loss of (i) income of decedent and (ii) services protection, care, and assistance provided by decedent;

    c.     Reasonable funeral expenses; and

    d.      Punitive damages.

## COUNT II: CIVIL RIGHTS ACTION (42 U.S.C. § 1983)

## (Plaintiff v. Michael Carey, Administrator of the Estate of Austin Lee Edwards)

83.     Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation asserted in the preceding and following paragraphs.

84.     At the time of Edwards' commission of the murders, arson, and abduction on November 25, 2022, Edwards was acting under color of state law, which includes acting under the pretense of law, as a sworn deputy sheriff employed by the WCSO.

85.     While using his position, training, badge, and equipment as a deputy sheriff, Edwards' conduct violated the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

86.     The foregoing actions of Edwards deprived Plaintiff's decedent of her rights.

87.     Edwards purported to act pursuant to his authority as a government official, i.e., a deputy sheriff, in order to gain access to and the trust of his victims at the Winek home.

88.     Edwards's actions have a sufficiently close nexus with the WCSO to be fairly treated as that of the State itself.

89.     In order to gain entry into his victims' home on November 25, 2022, Edwards used outward indicia suggestive of state authority – including his badge, service firearm, and informing his victims that he was a detective – to give the impression that Edwards was there on official government business and that his victims were obligated by law to comply with his commands. Furthermore, telling his victims that he was there to discuss illicit photographs sent by R.W. gave the appearance of governmental authority.

90.     Edwards's conduct occurred during the course of his performance of an apparent duty of office, and he could not have behaved in that way but for the authority provided to him by the office.

91.     Edwards would not have been able to obtain a firearm legally on his own, as his right to own a weapon had been revoked as a result of his conduct in 2016.

92.     The indicia of governmental authority provided to Edwards enabled Edwards to execute his scheme in a manner that private citizens never could have.

93.     If Plaintiff's decedent had not been told by Edwards that he was a law enforcement officer conducting an investigation, and if she had not seen his badge, gun, and other equipment, she would never have complied with his instructions or allowed him into her home in the first place.

94.     As a direct and proximate result of the foregoing acts, Plaintiff's decedent suffered unconscionable bodily injuries, physical pain, mental anguish, and death.

95.     As a direct and proximate result of the wrongful acts of Defendant's decedent, Plaintiff seeks the following damages pursuant to the Virginia Wrongful Death Act, Va. Code § 8.01-50, et seq.:

    a.     Sorrow, mental anguish, and solace, including society, companionship, comfort, guidance, kindly offices and advice of the decedent;

    b.     Compensation for reasonably expected loss of (i) income of decedent and (ii) services protection, care, and assistance provided by decedent;

    c.     Reasonable funeral expenses; and

    d.     Punitive damages.

## COUNT III: NEGLIGENCE AND GROSS NEGLIGENCE

### (Plaintiff v. Defendant Detective William Smarr)

96.     Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation asserted in the preceding and following paragraphs.

97.     Upon information and belief, Detective Smarr endorsed and approved Edwards to be hired as a deputy with WCSO.

98.     As the investigator for the WCSO in charge of reviewing Edwards's employment application to become deputy sheriff and conducting his background check, Defendant Detective Smarr hired Edwards in a negligent and grossly negligent manner.

99.     Defendant Detective Smarr violated WCSO's non-discretionary policies and procedures, and state law, Va. Code § 15.2-1705, when he did not receive the information from Edwards' prior employer, VSP, regarding the job performance that led to his resignation, before recommending that WCSO hire Edwards as a deputy.

100.    Defendant Detective Smarr failed to make contact with the three references listed on Edwards's employment application. Defendant Detective Smarr chose not to speak with Edwards's father who knew about Edwards's violent past and psychological issues that would foreseeably lead to injury and/or death to others.

101.    Defendant Detective Smarr attempted to contact Edwards's neighbors but found no one at home so he decided to forego trying to reach them.

102.    Defendant Detective Smarr tortiously concluded that Edwards was suitable for hire despite not speaking with Edwards's references and overlooking various parts of Edwards's employment application that was left blank.

103.    In doing so, Defendant Detective Smarr violated WCSO's non-discretionary policies and procedures which required applicants to submit a complete application.

104.    Defendant Detective Smarr was on actual or constructive notice of Edwards's psychological history, having asserted that his background was checked through the CCRE, NCIC, VCIN, and the FBI.

105.    In making the decision that Edward's was suitable for hire, Defendant Detective Smarr represented that he checked the CCRE for information on Edwards's background. However, had Defendant Detective Smarr checked the CCRE, he would have discovered Edwards's 2016 incident in which Edwards was detained for psychiatric evaluation after threatening to kill his father, himself, and had cut his hand. Edwards was not only detained under an emergency order but a judge also approved a temporary detention order to have Edwards transferred to a local psychiatric facility.

106.    Had Defendant Detective Smarr conducted a background check, he would have discovered that as a result of the serious nature of the 2016 incident, Edwards's right to own a gun had been revoked.

107.    Had Defendant Detective Smarr conducted an adequate background check, he would have understood that the plainly obvious consequence of hiring Edwards, with his violent past, psychological issues, and suicidal ideations, would foreseeably lead to injury and/or death to others.

108.    Defendant Detective Smarr's failure to conduct adequate background checks violated WSCO's non-discretionary policies and procedures and Virginia law, Va. Code § 15.2-1705, Va. Code § 19.2-389, and other state and federal laws.

109.    Defendant Detective Smarr wrongfully represented that Edwards was suitable for hire, thereby providing him with a badge and service gun despite Edwards' known propensity for violence to others, psychological issues, and suicidal ideations.

110.    Upon information and belief, Defendant Detective Smarr's conduct as set forth above violated and fell below standards established by written WCSO policies and procedures. As such, his negligence is not entitled to discretionary immunity.

111.    Defendant Detective Smarr's conduct constituted gross negligence because, under the circumstances, it represented a degree of negligence showing indifference, utter disregard, and lack of prudence amounting to a complete neglect of the danger Edwards could pose to the safety of others if he was armed and granted all of the status and powers of a police officer.

112.    As a direct and proximate result of Detective Smarr's negligent and grossly negligent conduct as described above, Plaintiff's decedent suffered unconscionable bodily injuries, physical pain, mental anguish, and death.

113.    As a direct and proximate result of Detective Smarr's negligent and grossly negligent conduct as described above, recommending Edwards to be hired, hiring him, and issuing him a badge and a service firearm, Plaintiff seeks the following damages pursuant to the Virginia Wrongful Death Act, Va. Code § 8.01-50, et seq.:

a.    Sorrow, mental anguish, and solace, including society, companionship, comfort, guidance, kindly offices and advice of the decedent;

b.    Compensation for reasonably expected loss of (i) income of decedent and (ii) services protection, care, and assistance provided by decedent; and

c.    Reasonable funeral expenses.

## COUNT IV: NEGLIGENT AND GROSSLY NEGLIGENT ENTRUSTMENT

### (Plaintiff v. Defendant Detective William Smarr)

114.    Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation asserted in the preceding and following paragraphs.

115.    Defendant Detective Smarr knew, or in the exercise of reasonable care should have known, that Edwards was unfit to possess a service weapon.

116.    Defendant Detective Smarr knew, or in the exercise of reasonable care should have known, that Edwards was unfit to possess a badge.

117.    Despite actual and constructive knowledge that Edwards was unfit to possess a gun and a badge, Detective Smarr issued a service weapon and a badge to Edwards, which Edwards used to gain access to the home and murder Plaintiff's decedent.

118.    Upon information and belief, Defendant Detective Smarr's conduct as set forth above violated and fell below standards established by written WCSO policies and procedures, Virginia law, and federal law. As such, his negligence is not entitled to discretionary immunity.

119.    Defendant Detective Smarr's conduct constituted gross negligence because, under the circumstances, it represented a degree of negligence showing indifference, utter disregard, and lack of prudence amounting to a complete neglect of the danger Edwards could pose to the safety of others if he was armed and granted all of the status and powers of a police officer.

120.    As a direct and proximate result of Detective Smarr's negligent and grossly negligent conduct as described above, Plaintiff's decedent suffered unconscionable bodily injuries, physical pain, mental anguish, and death.

121.    As a direct and proximate result of Detective Smarr's negligent and grossly negligent conduct as described above, Plaintiff seeks the following damages pursuant to the Virginia Wrongful Death Act, Va. Code § 8.01-50, et seq.:

    a.    Sorrow, mental anguish, and solace, including society, companionship, comfort, guidance, kindly offices and advice of the decedent;

    b.    Compensation for reasonably expected loss of (i) income of decedent and (ii) services protection, care, and assistance provided by decedent; and

    c.    Reasonable funeral expenses.

**COUNT V: NEGLIGENCE AND GROSS NEGLIGENCE PER SE**

**(Plaintiff v. Defendant Detective William Smarr)**

122.    Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation asserted in the preceding and following paragraphs.

123.    At all times relevant to this action, hiring Edwards a deputy and issuing a service weapon and a gun to him were governed by Virginia law and federal law.

124.    At all times relevant to this action, Va. Code § 15.2-1705, prohibited Edwards from being employed as a deputy sheriff until WCSO received information from Edwards' prior employer, VSP, related to his job performance that led to his resignation.

125.    At all times relevant to this action, Va. Code § 15.2-1705 required an FBI record check, and a check of the CCRE, before Edwards was hired as a deputy.

126.    At all times relevant to this action, Va. Code § 19.2-389 prohibited Edwards from being hired as a deputy if he was listed in the CCRE as being ineligible to possess a firearm.

127.    At all times relevant to this action, pursuant to Va. Code § 18.2-308.2:1 and 18 U.S.C. § 922, it was illegal to give Edwards a gun.

128.    Plaintiff is a member of the class of people for whose protection the aforementioned statutes were enacted.

129.    Defendant Detective Smarr failed to comply with the aforementioned statutes.

130.    Defendant Detective Smarr's failure to comply with the aforementioned statutes constitute negligence *per se*.

131.    Defendant Detective Smarr is not entitled to discretionary immunity because he failed to comply with state and federal law.

132.    Defendant Detective Smarr's conduct constituted gross negligence *per se* because, under the circumstances, it represented a degree of negligence showing indifference, utter disregard, and lack of prudence amounting to a complete neglect of the danger Edwards could pose to the safety of others if he was armed and granted all of the status and powers of a police officer.

133.    As a direct and proximate result of Detective Smarr's negligence *per se* and gross negligence *per se* as described above, Plaintiff's decedent suffered unconscionable bodily injuries, physical pain, mental anguish, and death.

134.    As a direct and proximate result of Detective Smarr's negligence *per se* and gross negligence *per se* as described above, Plaintiff seeks the following damages pursuant to the Virginia Wrongful Death Act, Va. Code § 8.01-50, et seq.:

a.    Sorrow, mental anguish, and solace, including society, companionship, comfort, guidance, kindly offices and advice of the decedent;

b.    Compensation for reasonably expected loss of (i) income of decedent and (ii) services protection, care, and assistance provided by decedent; and

c.    Reasonable funeral expenses.

## COUNT VI: WILLFUL AND WANTON NEGLIGENCE

### (Plaintiff v. Defendant Detective William Smarr)

135.    Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation asserted in the preceding and following paragraphs.

136.    Defendant Detective Smarr's actions enumerated above, each individually and cumulatively, constituted an utter and total disregard of prudence and caution amounting to a complete neglect of the safety of Plaintiff's decedent.

137.    Defendant Detective Smarr's actions enumerated above, each individually and cumulatively, constituted willful and wanton negligence.

138.    As a direct and proximate result of Defendant Detective Smarr's willful and wanton negligence as described above, Plaintiff's decedent suffered unconscionable bodily injuries, physical pain, mental anguish, and death.

139.    As a direct and proximate result of Detective Smarr's willful and wanton negligence as described above, Plaintiff seeks the following damages pursuant to the Virginia Wrongful Death Act, Va. Code § 8.01-50, et seq.:

a.    Sorrow, mental anguish, and solace, including society, companionship, comfort, guidance, kindly offices and advice of the decedent;

b.    Compensation for reasonably expected loss of (i) income of decedent and (ii) services protection, care, and assistance provided by decedent;

c.    Reasonable funeral expenses; and

d.    Punitive damages.

## COUNT VII: NEGLIGENCE AND GROSS NEGLIGENCE

### (Negligence, Gross Negligence, Negligent Hiring, and Grossly Negligent Hiring)

### (Plaintiff v. Defendant Sheriff Blake Andis)

140.    Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation asserted in the preceding and following paragraphs.

141.    Had Defendant Sheriff Andis reasonably investigated Edwards, he would have understood that the plainly obvious consequence of hiring Edwards, with his violent past, psychological issues, and suicidal ideations, would foreseeably lead to injury and/or death to others.

142.    Defendant Sheriff Andis was on actual or constructive notice of Edwards's psychological history, having asserted that his background was checked through the CCRE, NCIC, VCIN, and the FBI.

143.    Had Defendant Sheriff Andis properly screened Edwards before hiring him as a Sheriff's Deputy and not acted with deliberate indifference in making his hiring decision, he would have discovered the February 2016 incident which rendered Edwards unfit and legally unable to buy or possess a firearm.

144.    Defendant Sheriff Andis's failure to conduct adequate background checks of Edwards violated WSCO's non-discretionary policies and procedures and Virginia law, Va. Code § 15.2-1705, Va. Code § 19.2-389, and other state and federal laws.

145.    Defendant Sheriff Andis violated WCSO's non-discretionary policies and procedures, and state law, Va. Code § 15.2-1705, when he did not receive the information from Edwards' prior employer, VSP, regarding the job performance that led to his resignation, hiring Edwards as a deputy.

146.    Defendant Sheriff Andis violated WCSO's non-discretionary policies and procedures when he hired Edwards without requiring him to submit a complete application.

147.    Defendant Sheriff Andis wrongfully hired Edwards, providing him with a badge and service gun despite Edwards' known propensity for violence to others, psychological issues, and suicidal ideations.

148.    Defendant Sheriff Andis, in wrongfully hiring Edwards as a Deputy Sheriff, disregarded Edwards' known propensity for violence and causing injury to others.

149.    Upon information and belief, Defendant Sheriff Andis's conduct as set forth above violated and fell below standards established by written WCSO policies and procedures. state law, and federal law. As such, his negligence is not entitled to discretionary immunity.

150.    Defendant Sheriff Andis's conduct as set forth above was negligent.

151.    Defendant Sheriff Andis's conduct constituted gross negligence because, under the circumstances, it represented a degree of negligence showing indifference, utter disregard, and lack of prudence amounting to a complete neglect of the danger Edwards could pose to the safety of others if he was armed and granted all of the status and powers of a police officer.

152.    As a direct and proximate result of Sheriff Andis's negligent and grossly negligent hiring of Edwards and issuing him a badge and a service firearm, Plaintiff's decedent suffered unconscionable bodily injuries, physical pain, mental anguish, and death.

153.    As a direct and proximate result of Defendant Sherif Andis's negligent and grossly negligent hiring of Edwards and issuing him a badge and service firearm, Plaintiff seeks the following damages pursuant to the Virginia Wrongful Death Act, Va. Code § 8.01-50, et seq.:

    a.    Sorrow, mental anguish, and solace, including society, companionship, comfort,

guidance, kindly offices and advice of the decedent;

b.      Compensation for reasonably expected loss of (i) income of decedent and (ii)

services protection, care, and assistance provided by decedent; and

c.      Reasonable funeral expenses.

## COUNT VIII: NEGLIGENT AND GROSSLY NEGLIGENT RETENTION

### (Plaintiff v. Defendant Sheriff Blake Andis)

154.    Plaintiff hereby incorporates by reference, as if fully set forth herein, each and

every allegation asserted in the preceding and following paragraphs.

155.    After having hired Edwards, Sheriff Andis failed to discover and take action with

respect to Edwards' violent past, psychological issues, and suicidal ideations, which could

foreseeably lead to injury and/or death to others.

156.    Defendant Sheriff Andis was on actual or constructive notice of Edwards's

dangerous instability, because one or more complaints, concerns, and "red flags" regarding

Edwards were raised by other WCSO personnel after Edwards was hired. Notwithstanding those

complaints, concerns, and "red flags," Defendant Sheriff Andis failed to review the screening

and background check of Edwards; failed to review the hiring decision; failed to investigate

Edwards' psychological history, known propensity for violence, and suicidal ideations; failed to

take action with respect to the legal prohibition on his possession of a firearm; and generally

failed to take any action whatsoever to address the complaints, concerns, and "red flags"

regarding Edwards that came to light after he was hired.

157.    Upon information and belief, Defendant Sheriff Andis's conduct as set forth

above violated and fell below standards established by written WCSO policies and procedures.

As such, his negligence is not entitled to discretionary immunity.

158.    Defendant Sheriff Andis's conduct constituted gross negligence because, under the circumstances, it represented a degree of negligence showing indifference, utter disregard, and lack of prudence amounting to a complete neglect of the danger Edwards could pose to the safety of others if he continued to be armed and granted all of the status and powers of a police officer.

159.    As a direct and proximate result of Sheriff Andis's negligent and grossly negligent retention of Edwards, Plaintiff's decedent suffered unconscionable bodily injuries, physical pain, mental anguish, and death.

160.    As a direct and proximate result of Defendant Sheriff Andis's negligent and grossly negligent retention of Edwards, Plaintiff seeks the following damages pursuant to the Virginia Wrongful Death Act, Va. Code § 8.01-50, et seq.:

    a.    Sorrow, mental anguish, and solace, including society, companionship, comfort, guidance, kindly offices and advice of the decedent;

    b.    Compensation for reasonably expected loss of (i) income of decedent and (ii) services protection, care, and assistance provided by decedent; and

    c.    Reasonable funeral expenses.

**COUNT IX: NEGLIGENT AND GROSSLY NEGLIGENT ENTRUSTMENT**

**(Plaintiff v. Defendant Sheriff Andis)**

161.    Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation asserted in the preceding and following paragraphs.

162.    Defendant Sheriff Andis knew, or in the exercise of reasonable care should have known, that Edwards was unfit to possess a service weapon.

163.    Defendant Sheriff Andis knew, or in the exercise of reasonable care should have known, that Edwards was unfit to possess a badge.

164.    Despite actual and constructive knowledge that Edwards was unfit to possess a gun and a badge, Defendant Sheriff Andis issued a service weapon and a badge to Edwards, which Edwards used to gain access to the home and murder Plaintiff's decedent.

165.    Upon information and belief, Defendant Sheriff Andis's conduct as set forth above violated and fell below standards established by written WCSO policies and procedures, Virginia law, and federal law. As such, his negligence is not entitled to discretionary immunity.

166.    Defendant Sheriff Andis's conduct constituted gross negligence because, under the circumstances, it represented a degree of negligence showing indifference, utter disregard, and lack of prudence amounting to a complete neglect of the danger Edwards could pose to the safety of others if he was armed and granted all of the status and powers of a police officer.

167.    As a direct and proximate result of Defendant Sheriff Andis's negligent and grossly negligent conduct as described above, Plaintiff's decedent suffered unconscionable bodily injuries, physical pain, mental anguish, and death.

168.    As a direct and proximate result of Defendant Sheriff Andis's negligent and grossly negligent conduct as described above, Plaintiff seeks the following damages pursuant to the Virginia Wrongful Death Act, Va. Code § 8.01-50, et seq.:

a.    Sorrow, mental anguish, and solace, including society, companionship, comfort, guidance, kindly offices and advice of the decedent;

b.    Compensation for reasonably expected loss of (i) income of decedent and (ii) services protection, care, and assistance provided by decedent; and

c.    Reasonable funeral expenses.

## COUNT X: NEGLIGENCE AND GROSS NEGLIGENCE PER SE

### (Plaintiff v. Defendant Sheriff Andis)

169.    Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation asserted in the preceding and following paragraphs.

170.    At all times relevant to this action, hiring Edwards a deputy and issuing a service weapon and a gun to him were governed by Virginia law and federal law.

171.    At all times relevant to this action, Va. Code § 15.2-1705, prohibited Edwards from being employed as a deputy sheriff until WCSO received information from Edwards' prior employer, VSP, related to his job performance that led to his resignation.

172.    At all times relevant to this action, Va. Code § 15.2-1705 required an FBI record check, and a check of the CCRE, before Edwards was hired as a deputy.

173.    At all times relevant to this action, Va. Code § 19.2-389 prohibited Edwards from being hired as a deputy if he was listed in the CCRE as being ineligible to possess a firearm.

174.    At all times relevant to this action, pursuant to Va. Code § 18.2-308.2:1 and 18 U.S.C. § 922, it was illegal to give Edwards a gun.

175.    Plaintiff is a member of the class of people for whose protection the aforementioned statutes were enacted.

176.    Defendant Sheriff Andis failed to comply with the aforementioned statutes.

177.    Defendant Sheriff Andis's failure to comply with the aforementioned statutes constitute negligence *per se*.

178.    Defendant Sheriff Andis is not entitled to discretionary immunity because he failed to comply with state and federal law.

179.    Defendant Sheriff Andis's conduct constituted gross negligence *per se* because, under the circumstances, it represented a degree of negligence showing indifference, utter disregard, and lack of prudence amounting to a complete neglect of the danger Edwards could pose to the safety of others if he was armed and granted all of the status and powers of a police officer.

180.    As a direct and proximate result of Defendant Sheriff Andis's negligence *per se* and gross negligence *per se* as described above, Plaintiff's decedent suffered unconscionable bodily injuries, physical pain, mental anguish, and death.

181.    As a direct and proximate result of Defendant Sheriff Andis's negligence *per se* and gross negligence *per se* as described above, Plaintiff seeks the following damages pursuant to the Virginia Wrongful Death Act, Va. Code § 8.01-50, et seq.:

a.    Sorrow, mental anguish, and solace, including society, companionship, comfort, guidance, kindly offices and advice of the decedent;

b.    Compensation for reasonably expected loss of (i) income of decedent and (ii) services protection, care, and assistance provided by decedent; and

c.    Reasonable funeral expenses.

## COUNT XI: WILLFUL AND WANTON NEGLIGENCE

## (Plaintiff v. Defendant Sheriff Andis)

182.    Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation asserted in the preceding and following paragraphs.

183.    Defendant Sheriff Andis's actions enumerated above, each individually and cumulatively, constituted an utter and total disregard of prudence and caution amounting to a complete neglect of the safety of Plaintiff's decedent.

184.    Defendant Sheriff Andis's actions enumerated above, each individually and cumulatively, constituted willful and wanton negligence.

185.    As a direct and proximate result of Defendant Sheriff Andis's willful and wanton negligence as described above, Plaintiff's decedent suffered unconscionable bodily injuries, physical pain, mental anguish, and death.

186.    As a direct and proximate result of Detective Sheriff Andis's willful and wanton negligence as described above, Plaintiff seeks the following damages pursuant to the Virginia Wrongful Death Act, Va. Code § 8.01-50, et seq.:

a.    Sorrow, mental anguish, and solace, including society, companionship, comfort, guidance, kindly offices and advice of the decedent;

b.    Compensation for reasonably expected loss of (i) income of decedent and (ii) services protection, care, and assistance provided by decedent;

c.    Reasonable funeral expenses; and

d.    Punitive damages.

## COUNT XII: VICARIOUS LIABILITY

### (Plaintiff v. Defendant Sheriff Andis)

187.    Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation asserted in the preceding and following paragraphs.

188.    At all times relevant to this action, Sheriff Andis, as the Sheriff of Washington County, employed Defendant Detective Smarr.

189.    At all times relevant to this action, Defendant Detective Smarr was operating within the course and scope of his employment with WCSO and for Defendant Sheriff Andis.

190.    Defendant Detective Sheriff Andis is vicariously liable for the acts and omissions of his employees, including Defendant Detective Smarr.

191.    As a direct and proximate result of the wrongful actions described above, Plaintiff's decedent suffered unconscionable bodily injuries, physical pain, mental anguish, and death.

192.    As a direct and proximate result of the wrongful actions described above, Plaintiff seeks the following damages pursuant to the Virginia Wrongful Death Act, Va. Code § 8.01-50, et seq.:

    a.    Sorrow, mental anguish, and solace, including society, companionship, comfort, guidance, kindly offices and advice of the decedent;

    b.    Compensation for reasonably expected loss of (i) income of decedent and (ii) services protection, care, and assistance provided by decedent;

    c.    Reasonable funeral expenses; and

    d.    Punitive damages.

## COUNT XIII: BATTERY

### (Plaintiff v. Michael Carey, Administrator of the Estate of Austin Lee Edwards)

193.    Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation asserted in the preceding and following paragraphs.

194.    Edwards falsely imprisoned, assaulted, and battered the Plaintiff's decedent, causing her extreme mental and physical suffering and ultimately her death.

195.    Plaintiff's decedent did not want Edwards to touch her, and Edwards intentionally touched her without her consent and without justification or excuse.

196.    The suffering and death of Plaintiff's decedent by Edwards was the proximate result of the negligent, grossly negligent, willful and wanton, and deliberately indifferent conduct of Defendants Sheriff Andis and Detective Smarr described above.

197.    Edwards assaulted and battered Brooke after gaining entry to the Winek home using his semi-automatic handgun and police badge.

198.    Edwards assaulted, battered, and falsely imprisoned Sharon and Mark Winek by duct taping their mouths and feet.

199.    Edwards continued to assault, batter, and falsely imprison Sharon and Mark Winek by placing a plastic bag over their heads, causing them to suffocate. Edwards taped the plastic bag tightly over their heads and secured it in place with duct tape behind their necks.

200.    Edwards continued to assault, batter, and falsely imprison Sharon and Mark Winek by cutting their throats. Sharon and Mark Winek did not immediately die as a result of the plastic bag over their heads and their throats being cut.

201.    As a direct and proximate result of the batteries described above, Plaintiff's decedent suffered unconscionable bodily injuries, physical pain, mental anguish, and death.

202.    As a direct and proximate result of the batteries described above, Plaintiff seeks the following damages pursuant to the Virginia Wrongful Death Act, Va. Code § 8.01-50, et seq.:

a.    Sorrow, mental anguish, and solace, including society, companionship, comfort, guidance, kindly offices and advice of the decedent;

b.    Compensation for reasonably expected loss of (i) income of decedent and (ii) services protection, care, and assistance provided by decedent; and

c.    Reasonable funeral expenses.

## COUNT XIV: ASSAULT

**(Plaintiff v. Michael Carey, Administrator of the Estate of Austin Lee Edwards)**

203.    Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation asserted in the preceding and following paragraphs.

204.    Edwards assaulted Plaintiff's decedent.

205.    Edwards intentionally made threatening acts that were intended to put Plaintiff's decedent in reasonable fear of imminent physical injury.

206.    Edwards' actions placed Plaintiff's decedent in reasonable fear of her safety.

207.    As a direct and proximate result of the assaults described above, Plaintiff's decedent suffered unconscionable bodily injuries, physical pain, mental anguish, and death.

208.    As a direct and proximate result of the assaults described above, Plaintiff seeks the following damages pursuant to the Virginia Wrongful Death Act, Va. Code § 8.01-50, et seq.:

a.    Sorrow, mental anguish, and solace, including society, companionship, comfort, guidance, kindly offices and advice of the decedent;

b.    Compensation for reasonably expected loss of (i) income of decedent and (ii) services protection, care, and assistance provided by decedent; and

c.    Reasonable funeral expenses.

## COUNT XV: FALSE IMPRISONMENT

**(Plaintiff v. Michael Carey, Administrator of the Estate of Austin Lee Edwards)**

209.    Plaintiff hereby incorporates by reference, as if fully set forth herein, each and every allegation asserted in the preceding and following paragraphs.

210.    Edwards falsely imprisoned Plaintiff's decedent.

211.    Edwards intentionally restricted Plaintiff's decedent's freedom of movement without legal right.

212.    Edwards falsely imprisoned Plaintiff's decedent through the intentional use of force, words, and act, which the Plaintiff's decedent was afraid to ignore and to which she reasonably believed that she must submit.

213.    As a direct and proximate result of the false imprisonment described above, Plaintiff's decedent suffered unconscionable bodily injuries, physical pain, mental anguish, and death.

214.    As a direct and proximate result of the false imprisonment described above, Plaintiff seeks the following damages pursuant to the Virginia Wrongful Death Act, Va. Code § 8.01-50, et seq.:

    a.    Sorrow, mental anguish, and solace, including society, companionship, comfort, guidance, kindly offices and advice of the decedent;

    b.    Compensation for reasonably expected loss of (i) income of decedent and (ii) services protection, care, and assistance provided by decedent; and

    c.    Reasonable funeral expenses.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendants, jointly and severally, as follows:

1.    For wrongful death damages, in an amount to be proven at trial;

2.    For survival damages, including pre-death pain and suffering damages, in an amount to be proven at trial;

3.      For loss of life damages, in an amount to be proven at trial;

4.      For reasonable funeral and burial expenses, in an amount to be proven at trial;

5.      For punitive damages;

6.      For interest;

7.      For reasonable costs of this suit and attorneys' fees;

8.      For pre-judgment and post-judgment interest and costs; and

9.      For such further other relief as the Court may deem just, proper, and appropriate.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Local Rules for the United States District Court Eastern District of Virginia, Plaintiff hereby requests a trial by jury on all claims, defenses, and issues.

JONATHAN KASTENBAUM, AS ADMINISTRATOR OF THE ESTATE OF SHARON WINEK, DECEASED


BY: */s/ Ashley T. Davis, Esq.*
       Of Counsel

Ashley T. Davis (VSB No. 68078)
ALLEN, ALLEN, ALLEN & ALLEN
1809 Staples Mill Rd.
Richmond, Virginia 23233
Phone/E-Fax: (804) 257-7526
ashley.davis@allenandallen.com

David M. Ring, Esq. (California State Bar No. 151124), *to be admitted pro hac vice*
Neil K. Gehlawat, Esq. (California State Bar No. 289388), *to be admitted pro hac vice*
Peter A. Reagan, Esq. (California State Bar No. 289388), *to be admitted pro hac vice*
TAYLOR & RING, LLP
1230 Rosencrans Avenue, Suite 360
Manhattan Beach, California 90266
Phone: (310) 209-4100
Email: ring@taylorring.com
Email: gehlawat@taylorring.com

*Counsel for Plaintiff Jonathan Kastenbaum,*
*as Administrator of the Estate of Sharon Winek, Deceased*